## Morrison *v.* Altland, Appellant.

*Landlord and tenant—Farms—Farm lease—Farming on halves —Consent to removal of hay and straw—Evidence.*

In an action by the landlord against the tenant, under lease for a farm to be farmed on the shares, which provided that no hay and straw should be removed from the premises without the consent of the lessor, the tenant sought to set off one-half the amount received

by the landlord for the sale of certain hay and straw. An offer was made to sustain the item of set-off by testimony showing the consent of the landlord to such removal. This offer was excluded as an attempt to modify the written lease. Under such circumstances, it was reversible error to exclude this testimony.

The mere fact that the consent was alleged to have been given when the lease was executed was immaterial. The consent then given would no more constitute a variation of the written instrument than if the landlord had consented immediately after it was delivered.

Argued November 10, 1919. Appeal, No. 92, Oct. T., 1919, by defendant, from judgment of C. P. Lancaster County, Oct. T., 1919, No. 40, on verdict for plaintiff in the case of D. C. Morrison v. Robert .F. Altland. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Assumpsit on account arising from the leasing of land. Before LANDIS, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $199.79 and judgment thereon. Defendant appealed.

*Errors assigned* were various rulings on evidence.

*John A. Coyle,* for appellant.

*John E. Malone,* for appellee.

OPINION BY LINN, J., February 28, 1920:

In this suit by a landlord against his tenant to re: cover money paid for the tenant's account, money loaned, for work performed, for materials furnished, for the value of produce retained by the tenant and for loss sustained because the tenant refused to feed cattle, the tenant sought to set off, among other items, one-half the amount received by the landlord for the sale of cer-

tain hay and straw.  The testimony offered to sustain
this item of set-off was excluded as an attempt to modify
the written lease by insufficient evidence.

The lease was drawn by the landlord himself, was
dated March 31, 1910, and specified no term.  The ten-
ant entered several days before the execution of the writ-
ten lease and surrendered possession about two years
later.

The provisions of the lease now important are the fol-
lowing:

"To be farmed on the halves......No hay, straw or
anything of the kind to be removed from the farm with-
out the consent of the said Morrison......," the land-
lord.

When the tenant took the farm there were on it about
six tons of hay and ten tons of straw, increased, when he
left, by about sixteen and twenty-five tons of each re-
spectively; this excess was sold by the landlord about a
week after the tenant left, and one-half the amount re-
ceived therefor raised the disputed set-off.

Shortly before surrendering possession, the tenant
wished to bale the excess hay and straw, but the land-
lord, as the tenant testified "forbade me to do it.  He
said if I got a hay press in there he would sue them
and me too, and I couldn't get anybody to do it.  I had
asked him to cut the mow in two and I would take half
of it and let him have the other half.  He wouldn't let
me."  On the day when the tenant moved from the farm,
the landlord, in the tenant's words "......asked me
about settling.  I said 'It don't suit me to-day; I am
moving but I will come up on Saturday'; I said 'to
settle everything—hay and straw.'  He said 'Yes sir.'
I went up on Saturday.  He wouldn't give me no credit
for any hay or straw.  He said that belonged to him.
He said I wasn't on the place."

The question now is, the hay and straw having been
produced "on the halves" but not being removable "from
the farm without the consent of the said Morrison

......," did Morrison consent?   If he did, and then sold the hay and straw himself, the tenant is entitled to credit accordingly.   .

The evidence offered by the tenant was his own testimony to the effect that on or about March 22, 1910, he and his brother had an interview with the landlord and agreed upon the terms on which the farm should be rented.   He testified that the landlord said, with reference to the hay and straw, that he "was just to leave as much when I (he) moved away as there was there."   On the 3d of April, being then in possession, the lease was presented for execution and he called the landlord's attention to the provision requiring assent to the removal of hay and straw, stating that that was not "what we talked over" and the landlord explained he had inserted that provision so that he could show it "......to the next farmer when I moved away," repeating, however, that the tenant "could have half the hay and straw when I (he) moved away......"

The tenant also offered to prove by his brother that he was present at the interview of March 22d and that the landlord agreed that the tenant should have the right to divide and remove the excess as above described.

The testimony of the tenant was stricken out, and an objection was sustained to receiving the testimony of the tenant's brother.

Farming "on the halves" meant that one-half of the hay and straw produced belonged to the tenant, though under the lease he could not remove it without the landlord's consent; if the landlord consented, proof of that fact did not constitute variation or contradiction of the lease; it showed compliance with the condition stated in the lease to be requisite to the removal of the tenant's hay and straw.

Did the landlord consent?   The tenant testified that he consented when the lease was executed after possession was taken; he also testified that in the presence of his brother, on March 22d before taking possession, the

landlord also consented, and it was proposed by the evidence of the tenant's brother to corroborate the tenant as to the assent then given by the landlord.

It was proper to prove the consent of the landlord and the excluded testimony was sufficient, if believed, to establish it; the mere incident that consent was given when the lease was executed and delivered is immaterial; consent then given would no more constitute a variation of the paper than if the landlord had consented immediately after it was delivered. Nor, under the circumstances, was the testimony of the tenant and of his brother to the landlord's consent given on March 22d irrelevant. It corroborated the tenant's evidence of consent at the time of the execution and delivery of the lease: Croyle v. Cambria L. & I. Co., 233 Pa. 310, at 316; Gas and Oil Co. v. Glass Co., 213 Pa. 183, at 189.

The assignments of error are sustained and the judgment is reversed with a venire facias de novo.

KELLER, J., did not sit and took no part in the decision.